Case 40—Action by Harry Watson's Admr. against the I. C. R. R. Co. for Causing the Death of Plaintiff's Intestate.— Jan. 19.

# Illinois Central R. R. Co. v. Watson's Admr.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS   REVERSED.

RAILROADS—NEGLIGENCE—PERSONS NEAR THE TRACKS—LICENSEE—EVIDENCE—STATEMENTS OF ENGINEER—DERAILMENT OF TRAIN—EXCESSIVE DAMAGES.

Held:   1. Plaintiff's intestate, a boy nine years of age, was killed, while standing in cooperage yards within the limits of a city, by a rick of staves falling over upon him.  The rick was one of a series placed at intervals of some eight or ten feet, extending from the yard in which plaintiff was out onto defendant's right of way.   The accident was caused by the derailment of defendant's train, which was backing around a curve at the rate of about twenty miles an hour; the train striking the first rick, which fell over, striking the second one, which fell and struck plaintiff's intestate.   There was evidence of negligence in the condition of the track and speed of the train.  HELD, that a peremptory instruction for defendant was properly refused.

2. In an action for negligent death of a person near the right of way, caused by the derailment of a train, evidence that witness said to the engineer about two minutes after the accident, "It looks like that engine could have been stopped before that," and that the engineer answered, "Well, . . . that won't bring the boy back," was improperly admitted, as what witness thought was immaterial, and the answer of the engineer was not a statement of fact.

3. In an action for negligent death of one standing near a railroad right of way, caused by the derailment of a train, the fact that the watchman was absent from the crossing was immaterial, where deceased was not on the crossing, and the absence of the watchman had nothing to do with his injury.

4. In an action for negligent death of one standing near a railroad right of way, caused by the derailment of a train, evidence that the cars got off the track once in a while at other places than that of the accident was incompetent.

Illinois Central R. R. Co. v. Watson's Admr.

5. In an action for negligent death of a boy nine years of age, a verdict of $18,000 was palpably excessive.

PIRTLE & TRABUE, FOR APPELLANT.
J. M. DICKINSON, OF COUNSEL.

POINTS AND AUTHORITIES.

1. Excessive verdict. L. & N. R. R. Co. v. Shivell, 13 Ky. Law Rep., 902; Standard Oil Co. v. Tierney, 92 Ky., 367, 381; Standard Oil Co. v. Tierney, 96 Ky., 89; L. S. R. R. Co. v. Minogue, 90 Ky., 369; L. & N. R. R. Co. v. Creighton, 106 Ky., 42, s. c. 20 Ky. Law Rep., 1692.

2. The testimony was incompetent, because hearsay; conjecture, etc. Williams v. R. R. Co., 96 Mo., 275; s. c., 9 S. W. Rep., 573. The so-called admissions of the engineer are incompetent. McLeod, Recr. v. Ginther, 80 Ky., 399; L. & N. v. Webb, 99 Ky., 332; C. & O. Ry. Co. v. Smith, 101 Ky., 111; Embry v. L. & N. R. R. Co., 18 Ky. Law Rep., 436-7.

3. Peremptory instruction. (a) Decedent was a trespasser and his peril not discovered. Brown v. L. & N. R. R., 97 Ky., 228; Dalton's Admr. v. L. & N. R. R. Co., 22 Ky. Law Rep., 97.

(b) There was no duty of diligence to decedent, and therefore no breach of duty. Lackat v. Lutz, 94 Ky., 287; Clark v. Hart, 17 Ky. Law Rep., 604; Reeves v. French, 20 Ky. Law Rep., 220; Mitchell, etc. v. Ehmett, 23 Ky. Law Rep., 1788; Winterbottom v. Wright, 10 M. & W., 109; Collins v. Selden, L. R., 3 C. P., 905; s. c. 37 L. J. C. P., 223; Losee v. Chute, 51 N. Y., 494 (10 Am. Rep., 638); Dillon v. Conn. R. R. Co. (Mass. Oct. 24, '91), 28 N. E. Rep., 899; Woolwine's Admr. v. C. & O. Ry. Co., (W. Va. April 2, '92), 15 S. E. Rep., 81; Holland v. Sparks, 92 Ga., 753 (18 S. E. Rep., 990.)

4. The evidence may justify submission of issue of ordinary negligence, while not justifying submission of issue of gross negligence. McHenry, etc. v. Sneddon, 98 Ky., 686; L. & N. R. R. Co. v. Bernard, 18 Ky. Law Rep., 672; L. & N. v. Creighton, 106 Ky., 42; s. c. 20 Ky. Law Rep., 1692; See also L. & N. v. Taaffe's Admr., 21 Ky. Law Rep., 64; L. & N. R. R. Co. v. Ritter, 2 Ky. Law Rep., 385.

5. The instruction was erroneous in authorizing punitive damages upon the assumption of gross negligence merely, without recklessness or intentional disregard of precautions necessary to public safety. McHenry, etc. Co. v. Sneddon, 98 Ky., 686; L. & N. v. Kingman, 18 Ky. Law Rep., 83; 12 A. & E. Ency., 2d ed., p. 28; 3d Sedgw., Dam., sec. 363; 1 Sutherland

Dam., 724; Milwaukee, etc. v. Arms., 91 U. S., 495; Lake Shore, etc. v. Prentiss, 147 U. S.; 8 Rose's Notes, 707; Fla., etc. R. R. Co. v. Hirst, 30 Fla., 1 (32 Am. St. Rep., 33); Jacobs v. L. & N. R. R. Co., 10 Bush, 273.

TAYLOR, GILBERT & LUCAS, HAZELRIGG & CHENAULT, FOR APPELLEE.

1. The evidence justified an instruction on punitive damages.

2. The jury having found punitive damages, it alone became the judge of the amount and this court should not interfere unless the damages assessed is so excessive as at first blush to show that the jury was controlled by bias and prejudice.

3. With no improper testimony or instructions, the amount of *punitive* damages is beyond the court's reach.

## EXCESSIVE DAMAGES.

The life expectancy of the lad who lost his life at the hands of the company was something over forty years according to the life tables in evidence.

When he worked at heading staves as he sometimes did to aid his mother in keeping the wolf from the door, he got seventy-five cents per day. It was proper for the jury to consider that his earnings would increase as his strength would increase, and we insist that it would not be unreasonable to say that $18,000 would be a fair estimate of his earning power through life.

But if we reduce that to ten or twelve thousand as being a fit compensation for his said earning power during life, we have seen that the acts of the company constituted gross negligence, and in addition to compensatory damages, exemplary or punitive damages were allowable, and here the amount is practically not limited except it be for such a sum as would at first blush indicate passion and prejudice.

In the light of the common run of judgments in damage cases where there has been gross negligence, certainly no one can say the jury was influenced by passion or prejudice.

Compensation for damages for injuries to life and limb in Kentucky should be as large as in other States, at least no reason can be suggested why the value of a life or limb in Kentucky is to be estimated at a less sum than in other States.

In Heddles v. Chicago, &c. R. R. (Wis.), decided June 21, 1890, 11 L. R. A., (Note) 50, a verdict for $18,500 for the permanent disablement of a boy seven years old was held not

Illinois Central R. R. Co. v. Watson's Admr.

excessive. A Texas jury gave $20,000 in International & G. N. R. R. Co. v. Brazzil, 78 Texas, 314. A New York verdict for $25,000 was approved in Alberti v. N. Y. L. E. & W. R. R. Co., 43 Hun., 421.

Of course, many other cases can be cited showing similar verdicts, and in all courts the law is that verdicts will not be upheld when they are a result of passion and prejudice. A few Kentucky cases may be cited: L. & N. v. Papp, 16 R., 369, $10,000, loss of leg of a child five or six years old; I. C. R. R. Co. v. Stewart, $15,000 for loss of legs; 23 R., 431, loss of life without punitive damages, $10,000, victim sixteen years of age; C. & O. v. Lang's Admr., 19 R., 65, $10,000, solely *compensatory*, victim eighteen years old, earning $1 per day, 20 R., 533, $10,000 *compensatory*.

In 20 R., 1978, $13,500, death, solely *compensatory;* 72 Fed. Rep., 488, $18,000, loss of leg and partial paralysis. See Watson on Damages, secs. 326, 327, 328, 329, 330; L. & N. v. Shivell's Admr., 13 R., 902, $15,000; Gulf C. & S. F. R., &c. v. Dorsey, 185 W. Rep., 44, $17,000.

## AUTHORITIES.

R. R. Co. v. Hill, 9 Am. Neg. Cas., 11 (Ala.); Claxton's Admr. v. Lex. & B. S. R. R., 13 Bush, 636; L. & N. R. R. v. Papp, 96 Ky., 99; Eskridge v. C. N. O. & T. P. R. R., 89 Ky., 367; Heddles v. Chicago, &c. R. R., 11 L. R. A., (note) 50; International, &c. R. R. v. Brazzil, 78 Tex., 314; Alberti, &c. v. N. Y., &c. R. R., 43 Hun., 421; C. & O. v. Lang, 19 R., 65; I. C. R. R. v. Stewart, 23 R., 431; 20 R., 533, 20 R., 1978, 72 Fed. Rep., 488; Watson on Damages, secs. 326-330; L. & N. R. R. v. Shivell's Admr., 13 R., 902; Gulf, &c. R. R. v. Dorsey, 18 S. W. Rep., 44; L. & N. v. McCoy, 81 Ky., 403; L. & N. v. Moore, 83 Ky., 675; L. & N. v. Mitchell, 87 Ky., 327; L. & N. v. Earl, 94 Ky., 368; L. & N. v. Long, 94 Ky., 410.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Harry Watson, a little boy nine years old, was killed in Paducah by a rick of staves which were knocked over upon him by a car of the Illinois Central Railroad Company, which became derailed and ran against the staves. This suit was filed by his personal representative to recover for his death, on the ground that it was caused by the negligence

of the defendant. The track of the railroad was curved. The outer rail was not raised, as it should have been, to keep the outer wheel from jumping off the track as it passed around the curve. The track was also wavy, as stated by by the witnesses; that is, it was not level, and there were high and low places in it. The train was backing, and the evidence for the plaintiff tended to show that it was running as fast as twenty miles an hour. It was ninety-five feet from the point where the boy was hurt to the point where the car left the track. The ground was plowed up by the wheels about forty feet, the wheels sinking in the ground about halfway to the boxing. The staves were ricked in rows, leaving an aisle every eight or ten feet. There were five piles of staves. The child was in between the second and third. Three ricks were knocked over, and the weight of the staves killed him. The child was in the yard of the Paducah Cooperage Company, but some of the staves were ricked up beyond the line of its yard, and over on the railroad's right of way. The car, when derailed, came in contact with the fifth rick of staves, knocking it over on the fourth, the fourth over on the third and it over on the child, who was a licensee on the grounds of the cooperage company. He had been employed there, but at the time of his injury was playing in the yard. He did not have steady work. The jury returned a verdict in favor of the plaintiff for $18,000.

It is insisted for appellant that a peremptory instruction should have been given, because no duty was owed to the boy until his peril was discovered, and after it was discovered no amount of care could have saved him. The boy was rightfully in the yards of the cooperage company, and whether the staves were stacked out beyond the line of the right of way, or not, is immaterial for the purpose of

this case, for, if they were stacked over the line, and extended upon the right of way, this was consented to by the railroad company, or acquiesced in by it, and its liability here is the same as if it had put the staves there itself.    The right of way was only eighteen feet wide.    It was incumbent on the defendant, in operating so dangerous an instrumentality as a railroad train, to keep it under control, and not allow it to leave the track and knock down structures on the lands of adjoining owners.    The cooperage yard was a place where the presence of persons should have been anticipated, for people were regularly employed there, working on the staves, and passing along the aisles between the ricks.    It was within the limits of the city, and it was incumbent on the company, in handling so dangerous an instrumentality where the population is crowded, to exercise proper care for the protection of human life.    There was evidence sufficient to go to the jury as to the negligence of the company in the condition of the track and in the speed of the train.    It was the duty of the company to build its track on the curve so that the cars could be safely operated on it with proper care.    It was also its duty, in backing these cars around the curve with the switching engine, to move them at such a rate of speed as a due regard for the safety of others required.    It is true, it has been held that trespassers on the track at places where the presence of persons on the track should not be anticipated can not recover for an injury received by them, unless it might have been avoided by proper care on the part of the defendant after their peril is discovered, but this rule only applies when the cars are running on the right of way.    It has no application where they are negligently permitted to leave the right of way and trespass on another.    And it has also been held that, at places where the presence of

persons on the track should be anticipated, ordinary care must be exercised to prevent injury to them, and a recovery may be had if such care is not exercised, and by reason of this they are injured. While the presence of the particular little boy was not to be anticipated between the ricks of staves, it was a place where the presence of persons, and probable injury to them from the knocking down of the staves by reason of the running of the cars against them, should have been anticipated. If the little boy, standing where he was, had been struck by the car itself, on elementary principles the defendant would be liable, for manifestly the company could not negligently run its cars on the property of the adjoining proprietor, and commit a trespass on the person of another, lawfully there, without being responsible for the injury done him. The rule is elementary that he who negligently sets a force in motion is accountable for all its consequences directly flowing from it until exhausted. The force of the car was imparted to the fifth rick of staves, and from it to the fourth, from it to the third, and from it to the boy. The force that killed the boy came from the car, and the defendant was liable therefor. 1 Bishop on Noncontract Law, section 45; Cooley on Torts, section 70.

The injury in Holland v. Sparks, 92 Ga., 753, 18 S. E., 990, occurred under very different circumstances. The deceased was walking along the railroad track. He was on the right of way, and at a place where those in charge of the train had no reason to expect any one. There was no evidence of negligence in the management of the train, except its speed, and of that he could not complain. In Dillon v. Connecticut River Railroad Co., (Mass.) 28 N. E., 899. the decedent was a trespasser on the right of way. And in Woolwine v. C. & O. R. Co., 36 W. Va., 329, 15 S. E., 81, 16 L. R. A., 271, 32 Am. St. Rep., 859, the decedent was visiting an employe of the com-

pany on its right of way, and where the presence of persons was not to be anticipated, and was killed by the train leaving the track.     None of these cases are therefore in point.

The case of Cumberland Telegraph, etc., Co. v. Martin's Adm'r (25 R., 787) 76 S. W., 394, is also relied on.     But that case differs from this, in that the wire there which caused the injury was in itself harmless, while the freight train, rapidly moving backward, was of itself dangerous.     The death of the decedent was due there to the force that came from the clouds, while here it was due to the force that came from the car.     This distinction was pointed out.     In the response to the petition for re-hearing in that case the court said:     "He who handles an agency which is of itself dangerous to human life is responsible for injuries therefrom not caused by extraordinary natural occurrences or the interposition of strangers.     But as to things which are not of themselves essentially instruments of danger the rule is different, and for them the negligent party is not responsible to strangers.     If the telephone company had used over its wires a current of electricity which was of itself dangerous to life, a different question would be presented."     Cumberland Telegraph, etc. Co. v. Martin's Adm'r 25 R., 1298, 77 S. W., 718.     In the case before us the rapidly moving train was not only an instrument of danger, but at a point where the danger of the train leaving the track on the outside of the curve, and the presence of others in the staveyard near by, and injury to them, should have been anticipated.     The force which killed the boy came from the train, and this force was projected beyond the right of way; there inflicting an injury for which, had not death resulted, an action of trespass would have lain at common law.     The motion for a peremptory instruction was therefore properly refused.

The court erred in allowing the plaintiff to prove by Fred

Collins that he said to the engineer about two minutes after the accident, "It looks like that engine could have been stopped before that, and that the engineer said,"Well, damn it! that won't bring the boy back." What Collins thought about the stopping of the engine was immaterial, and the answer of the engineer was a statement of no fact, and was incompetent.

The absence of a watchman from the crossing was immaterial, as the deceased was not on the crossing, and this had nothing to do with the injury.

The fact that the cars got off the track now and then at other places was not competent as evidence for the plaintiff.

There was sufficient evidence of gross negligence to submit the case to the jury, but we all concur in the conclusion that the verdict for $18,000 is palpably excessive, and should be set aside. L. & N. R. Co. v. Creighton, 106 Ky., 42, 20 R., 1691, 50 S. W., 227; Board of Internal Improvements v. Moore (23 R., 1885), 66 S. W., 417.

Judgment reversed, and cause remanded for a new trial.