## Fidelity & Casualty Co. of New York v. Maddox.

(Decided Jan. 14, 1936.)

L. R. CURTIS for appellant.

S. J. STALLINGS and FUNK & PORTER for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Appellant became surety upon the official bond of Edward L. Carrithers as a county patrolman. On the night of September 8, 1934, Carrithers shot Hugh Maddox, appellee, through the foot with a pistol, and Maddox brought this suit against Carrithers and appellant as surety on his official bond to recover for the injury

thus sustained. The trial resulted in a verdict and judgment thereon in favor of Maddox for $710, and the surety company appeals.

The sole ground relied upon for a reversal of the judgment is that the evidence shows conclusively that at the time Carrithers shot Maddox, he, Carrithers, was not acting in an official capacity, but it was a personal act of his, and his surety is not liable for the result of such act, and therefore the court should have sustained its motion for a directed verdict.

There is no material conflict in the evidence. It is agreed and the evidence so shows that Maddox had committed no offense either in or out of the presence of the officer, and there was no warrant for his arrest, nor any reason for his being arrested, and that Carrithers was not undertaking to arrest Maddox or any other person, nor undertaking to deputize him to assist him in any official duty. The action is based upon the negligent use of the pistol by Carrithers, in the following language:

"The defendant, Edward L. Carrithers, while acting in his official capacity as a county patrolman by virtue of his said office, handled a pistol which was in his possession for the pursuance of his duties, in such a careless and negligent manner, etc. * * *"

Under the bond, the surety covenants that the principal "shall well and properly discharge all of the duties of his office as required by law." The question to be determined is whether or not Carrithers was engaged in an official act or discharge of a duty required by law.

Maddox testified that he was in a tavern near Louisville, Ky., and Carrithers came in and invited him to ride around with him for company and Maddox told him he could not go and Carrithers caught him by the ear and said, "Well, if you don't go I will shoot you in the foot," and when Maddox again declined to go, Carrithers pulled his pistol and shot him in the foot. Carrithers testified that when he asked Maddox to go with him, he, Maddox, started kidding him about thinking he was chief of police because he was carrying a larger caliber gun than usual, and when he went to pull the gun out of the holster to show it to Maddox, it was fired accidentally. He said he did not have to pull the

gun out at all and there was no reason for him to do so except to show it to Maddox. However, he denies making any threat to shoot Maddox, and this is the only conflict in their testimony.

In Taylor v. Shields, 183 Ky. 669, 210 S. W. 168, 169, 3 A. L. R. 1619, it was alleged and shown by the proof that the arrest of Taylor was without warrant or other authority of law, because at the time of the arrest Taylor was acting in a quiet, peaceful and law-abiding manner, had committeed no breach of the peace or any other offense in or out of the presence of the officers, and the officers had no reasonable grounds to believe Taylor had committed either a misdemeanor or a felony. The circuit court held that under the proof no case was made out against the surety, and in affirming the judgment this court said:

"If these allegations be true, and upon demurrer they are so considered, then the acts of the policemen were their individual acts and not their official acts, or acts done by virtue of their office. * * * In order for the surety to become liable on the bonds of Shields and Shore, their acts must have been done by virtue of their office as policemen."

In Fidelity & Cas. Co. of New York v. White, 209 Ky. 402, 272 S. W. 902, 904, the officers acting in good faith, but upon a careless or negligent investigation, arrested White without a warrant upon the charge of operating a confidence game. White sued the officer and the surety on his official bond and recovered judgment against both of them. In reversing the judgment as against the surety, this court citing with approval Taylor v. Shields, supra, and Jones v. Van Bever, 164 Ky. 80, 174 S. W. 795, L. R. A. 1915E, 172, said:

"The question is whether there is liability on a bond for the negligent exercise of the arresting power, as distinguished from the malicious abuse of this power. * * * An official bond, whether it be that of a police officer or of any other person holding a public office, is designed to protect the public against his official misconduct. It is not designed to protect the public against his private misconduct."

See, also, Shelton v. National Surety Co. of New York, 235 Ky. 778, 32 S. W. (2d) 339; Lewis v. Treadway, 211 Ky. 140, 277 S. W. 309; Blanton v. Reed, 217 Ky. 533,

290 S. W. 347; Reed v. Philpot's Adm'r, 235 Ky. 429, 31 S. W. (2d) 709; Goins v. Hudson, 246 Ky. 517, 55 S. W. (2d) 388.

It is insisted, however, that inasmuch as the action is based on the negligent use of the pistol, the surety is liable regardless of whether Carrithers, in handling the pistol, was acting officially or unofficially, and that the authorities, supra, relied on for appellant are not applicable to this case because no element of negligence was involved in those cases; and to sustain this position the case of Fidelity & Cas. Co. of New York v. Boehnlein, 202 Ky. 601, 260 S. W. 353, 354, is relied on. In that case Hamilton, a policeman, while patrolling the beat on his motorcycle furnished to him by the city for that purpose negligently injured the plaintiff, and it was held that the surety was liable under a bond similar to the one involved in the present case. The court said:

"The whole queston here then is: Was Hamilton's act in negligently driving the motorcycle against plaintiff done by virtue of his office? Admittedly he was patroling his beat in the manner and with the means provided by the city to enable him to do so. In driving the motorcycle he was doing precisely what his duties required him to do, and what he had no right to do except in the discharge of his official duty. He had neither the right to patrol the beat nor drive the motorcycle except as a policeman, and there is no intimation in either the pleadings or the proof that anything he did (except his negligence) was not done in the discharge of his official duty. He was therefore driving the motorcycle by authority of his office, and it was only because of his negligent performance of his official duty that he struck and injured plaintiff. It necessarily follows that the surety upon his official bond is liable for such negligence upon its covenant that he would well and faithfully discharge his duties as a policeman."

It is insisted for appellee that the same principle obtains in the present case because Carrithers was authorized by law to carry a pistol. We are unable to accept such construction of that opinion. It must not be overlooked that the use of the pistol, not the mere carrying of it, was the proximate cause of the injury,

and it is not material whether it was discharged accidentally or intentionally, for in either event it was a personal act of Carrithers as distinguished from an official act in the performance of any duty required of him by law. The law authorizes an arresting officer to carry a pistol or other firearm, but this does not mean that the surety on his official bond will be held liable for the wrongful use of such firearm when the officer is acting personally and not in his official capacity. Viewing the facts of this case in the light of this well-established rule, it is at once obvious that the conduct of Carrithers in shooting Maddox was a personal act. The law imposed upon Carrithers no duty to take his pistol from the holster to show it to Maddox, as claimed by Carrithers, nor to shoot Maddox as claimed by him, because he refused to accompany Carrithers on his beat for company.

Our conclusion is that the court erred in failing to sustain appellant's motion for a directed verdict.

The judgment is reversed and remanded, with directions to grant appellant a new trial and for proceedings consistent with this opinion.