## Commonwealth v. Hoover's Adm'r.

(Decided June 24, 1938.)

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellant.

LESLIE W. MORRIS and MARION RIDER for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Commonwealth of Kentucky has appealed from a judgment for $20,000 rendered against it in the Franklin Circuit Court in favor of the administrator of the estate of Winferd Hoover, deceased, who was killed by a game warden of the Commonwealth on June 14, 1930. The General Assembly of Kentucky adopted a joint resolution at its 1936 session, Acts 1936, c. 439, authorizing the personal representative of the deceased to sue

the Commonwealth of Kentucky for such damages as may have been suffered and sustained by the estate of the deceased, "by reason of the injuries and death caused by the negligence or wrongful act of the Commonwealth of Kentucky, or its Deputy Game Warden, or agents, servants and employees."

Pursuant to such authorization, M. D. Hoover, administrator of the estate of Winferd Hoover, deceased, instituted an action in the Franklin Circuit Court to recover the sum of $25,000 for the alleged wrongful killing of the deceased.

Winferd Hoover, a boy 16 years of age, resided with his father on a farm five or six miles south of Frankfort. On June 14, 1930, the deceased and his brother, Horace, who was 14 years of age and a cripple, went to Elkhorn creek north of Frankfort to fish. They parked their car on a public road, and walked across the fields to a point in Elkhorn creek known as "Hawk's Nest Hole," which is about a mile below Forks of Elkhorn. They fished during the morning with poles and lines, and shortly after noon they removed their clothes, waded into the creek, and began feeling under the rocks and catching fish with their hands. This form of fishing is known as "cooning" or "tickling", and is in violation of section 1893b-5 of the Kentucky Statutes, which reads:

"Any person, or persons, who take or attempt to take from any of the waters of the state, except private ponds, any fish with a gig or spear, or by fishing under the rock, groping, grabbing, or tickling, or catching in any manner with the hands unless said fish shall be first caught by hook and line, trot line, hand line, or set line, shall be guilty of a misdemeanor, and on conviction, before any court having jurisdiction, shall be fined not less than fifteen dollars ($15.00) nor more than one hundred dollars ($100.00)."

Horace, the younger brother, carried a string. Winferd would catch a fish, hand it to Horace, and he would string it. After they had been so engaged about twenty minutes, two game wardens, Hoyt Lamb and B. R. Tucker, appeared on the scene. They concealed themselves behind bushes on the bank of the creek, and watched the boys for a few minutes. After the two

Hoover boys had waded up the creek to a point a few feet from where the two wardens were concealed, Lamb ran down the bank and waded out into the water toward the two boys. Horace Hoover testified that as Lamb reached the water he took a pistol from a holster, and said: "Don't turn those fish loose and stand where you are."

Horace told him that he had already dropped the fish. Concerning what then occurred, Horace Hoover testified as follows:

"When we got to about the edge of the creek, Lamb drew out his gun and he hollered to us to stop right where we was at, and I just raised my hands up like that (indicating raising hands over head), when he done that, and he run right towards us and he was closest to me, and when he got there he drew his gun up like he was going to hit me, and my brother said, 'Don't hit that little fellow,' and instead of hitting me, he leveled it on him and shot him.

"Q. Where did he shoot him? A. Shot him in the left temple.

"Q. What else? A. Well, my brother fell at the crack of the gun and Lamb picked him up and carried him out and pitched him down on the rocks.

"Q. Did he and Mr. Tucker leave there? A. Immediately."

Hoyt Lamb testified that he and Tucker came upon the two Hoover boys in the waters of Elkhorn creek, and that they concealed themselves behind two trees on the bank in order to ascertain whether or not a violation of the fish and game laws was being committed. Winferd Hoover was feeling under rocks in the stream, and the witness saw him catch three or four fish and hand them to his brother, who put them on a string. Lamb then walked down to the water's edge and said: "Well boys, I have caught you this time. Don't throw those fish away." Horace Hoover dropped the string of fish, and Lamb walked out into the water to arrest the boys and get the fish as evidence. While he was stooping over feeling in the water for the fish, Horace Hoover said: "Drown the d—— s—— of a b——," and lunged at him. Lamb raised up and drew his gun. Winferd

Hoover struck Lamb over the eye with a rock, and Lamb struck at him with the pistol, intending to strike him on the side of the head, and the pistol was accidentally discharged. There were no powder burns on deceased. Dr. F. M. Travis testified that on the same day he dressed a fresh wound on Lamb's forehead. B. R. Tucker, the other game warden present at the time the shooting occurred, corroborated Lamb in all material respects. He also testified, in substance, that Lamb called to the boys from the bank before he entered the water that he was a game warden and they were under arrest.

It is appellant's contention on this appeal that the trial court erred in overruling its motion for a peremptory instruction; that the verdict of the jury is excessive; and that the court erred in giving instructions 1 to 6, inclusive, and refusing to give instruction D offered by the defendant, and in refusing to permit the attorney for the defendant to argue to the jury that whatever sum in damages the jury might allow the plaintiff against the commonwealth of Kentucky would necessarily have to be paid by the taxpayers of the commonwealth.

The contention that the trial court erred in overruling appellant's motion for a directed verdict in its favor is based on the theory that Hoyt Lamb, the game warden, had no right to make an arrest upon mere suspicion; that he was acting outside the scope of his authority; and the death of Winferd Hoover was the result of a personal encounter between him and the game warden, and did not occur while the game warden was performing an official duty. As outlined above, the evidence shows the deceased was committing an act in violation of law for which the game wardens had a right to make an arrest without a warrant if the offense was committed in their presence. Section 1954c-13, Kentucky Statutes, reads in part:

"It shall be the duty of fish and game wardens and such other persons so appointed by the commission of game and fish, sheriffs and their deputies, constables, and their deputies, and all peace officers, to enforce within this state all laws relating to the protection, preservation or propagation of fish, birds or game. They may arrest on sight

and without warrant any person detected by them in the act of violating any such laws; they shall have the same right as sheriff to require aid in arresting without process any person found by them in the act of violating any of said laws.''

Lamb testified that the offense was committed in his presence, and on cross-examination admitted that he went to the place where the boys were standing for the purpose of arresting them and getting the fish to be used as evidence against them on their trial. If Horace Hoover's testimony is true, his brother was killed unlawfully and wrongfully while Lamb was acting in his official capacity as a game warden. On the other hand, if Lamb's testimony is true, Winferd Hoover was killed by the accidental discharge of Lamb's pistol while Lamb was acting in his necessary self-defense, and the commonwealth is not liable. This was a question for the jury to determine.

Counsel for appellant cite as authority for their contention a number of cases of which Fidelity & Casualty Company of New York v. Maddox, 262 Ky. 109, 89 S. W. (2d) 863; Fidelity & Casualty Company of New York v. White, 209 Ky. 402, 272 S. W. 902; and Taylor v. Shields, 183 Ky. 669, 210 S. W. 168, 3 A. L. R. 1619, are typical, in which it was held that the surety on an officer's bond was not liable for the private misconduct of the officer, but only for his official misconduct. In the present case, there was evidence that the officer was acting in his official capacity and not in a private capacity when the deceased was killed. The appellant's theory of the case in this respect was submitted to the jury in instructions offered by it. The master is liable for the wrongful act of his servant or employee resulting in injury to a third person, where the act of the employee was done in the course of his employment and in execution of the authority given him by the master. It matters not that the employee abused his authority or inflicted an unnecessary injury. Newberry Company v. Judd, 259 Ky. 309, 82 S. W. (2d) 359; John v. Lococo, 256 Ky. 607, 76 S. W. (2d) 897; Robards v. P. Bannon Sewer Pipe Company, 130 Ky. 380, 113 S. W. 429, 18 L. R. A., N. S., 923, 132 Am. St. Rep. 394. If Lamb had been acting for a private employer, the liability of the employer, under the facts disclosed by the record before us, undoubtedly would have been

a question for the jury. When a state waives its privilege of immunity from suits, and permits itself to be made a defendant in a suit by an individual without any restrictions or reservations, it places itself on the same plane as an ordinary defendant, and consents that the plaintiff's claim against it may be determined in the same manner as claims in actions against individuals and corporations are determined. Pennington's Adm'r v. Commonwealth, 242 Ky. 527, 46 S. W. (2d) 1079.

It would lengthen this opinion unduly to set out in full the instructions given by the court, but it is sufficient to say that the only criticism leveled at the court's action in giving or refusing to give instructions is the criticism of its failure to give instruction D offered by appellant or to incorporate the substance of instruction D in instruction 2 which was given. Instruction 2 told the jury, in substance, that, if they believed that Lamb, as the game warden and employee of the defendant, in attempting to arrest the decedent, Winferd Hoover, while acting within the scope of his employment and in his official capacity as a game warden, wrongfully and not in his necessary self-defense shot and killed the decedent, Winferd Hoover, they should find for the plaintiff unless they should find for the defendant under instructions A, B, or C. Instruction D, which was offered by appellant and refused by the court, told the jury, in substance, that, if they believed from the evidence that the deceased had violated the fish and game law in the presence of the officer, H. E. Lamb, then Lamb had a right to arrest the decedent without a warrant, and, if they believed from the evidence that after the arrest of the deceased and those accompanying him and while Lamb had them in custody, the deceased and those accompanying him attempted by force or violence to effect the release of the decedent from the custody of the officer, then said officer, H. E. Lamb, had the right to use such force as was necessary, or reasonably appeared to him to be necessary, to overcome the forceable resistance of deceased, and if, under these circumstances, deceased was shot and killed, they should find for the defendant. Instructions A, B, and C offered by the defendant were given by the court. In instruction A the jury were told that, if they believed the game warden, at the time

Winferd Hoover was shot and killed, had reasonable grounds to believe and did at the time in good faith believe that he was then in danger of losing his life or suffering great bodily harm at the hands of the decedent, and it appeared to the said game warden, in the exercise of reasonable judgment, that there was no other safe means of avoiding the then impending or to him apparently impending danger, then the said Lamb had the right to shoot in his necessary, or to him apparently necessary, self-defense, and if the killing occurred under such circumstances they should find for the defendant. In instruction B, the jury were told that, if they believed from the evidence that at the time the deceased was shot the said deceased and those accompanying him were attempting to interfere with the game warden, H. E. Lamb, in the performance of his duty, and, in their effort to prevent him from making an investigation, made a violent assault upon him and the said Lamb drew his pistol to repel said assault, and, in the act of repelling said assault and in protecting himself, the pistol was discharged and the deceased was shot and killed, they should find for the defendant. In instruction C the jury were told that, if they believed from the evidence that the decedent, Winferd Hoover, and others with him brought on a difficulty with H. E. Lamb, game warden, and were interfering with him in making an arrest of decedent and were about to do violence or great bodily harm to said officer, and the decedent received injuries which brought about his death as the result of said actions, then he was guilty of contributory negligence and they should find for the defendant, although they might believe that at the same time H. E. Lamb was also guilty of carelessness and negligence.

All of the defenses relied upon by the commonwealth were presented by the instructions offered by it and given by the court. It was not claimed by the commonwealth, and there is no evidence tending to show, that the deceased attempted to escape from the custody of Lamb. Horace Hoover testified that Lamb shot the deceased at a time when the latter was not making any demonstration of force, and Lamb testified that he struck at the deceased with his pistol and it was accidentally discharged, and that he did not intend to shoot him. He did not claim that he shot the deceased to pre-

vent his escape or to overcome his resistance to arrest. Under the circumstances, we think the court properly refused to give Instruction D.

The appellant also insists tnat the verdict is excessive. In cases of this kind, the assessment of damages is the province of the jury, and the verdict will not be disturbed unless the amount of damages allowed is so large and disproportionate to the probable loss as to strike the mind at first blush as necessarily the result of passion and prejudice on the part of the jury. The deceased was a strong, healthy boy, 16 years of age, with an expectancy of life, after he was 21 years of age, of nearly 34 years. The evidence shows that he was in the second year of high school, and was a good student, intelligent and industrious. In Ashland Sanitary Milk Company v. Messersmith's Adm'r, 236 Ky. 91, 32 S. W. (2d) 727, a judgment for $15,000 for the death of a girl 10½ years of age was affirmed. In the course of the opinion, it was said (page 730):

"Lastly, it is insisted with great earnestness that the verdict is excessive. The case is not to be determined by decisions of the long ago. Within recent years the purchasing power of money has decreased, and the courts are inclined to uphold larger verdicts than they were accustomed to approve years ago. The deceased was sound in health and of fine mental attainments, with all the opportunities that are now open to the members of her sex. In a case of this kind it is the province of the jury to assess the damages, and our duty to give effect to its finding unless we can say the verdict is so excessive as to strike us at first blush as being the result of prejudice or passion. This we cannot do."

In Dulaney v. Sebastian's Adm'r, 239 Ky. 577, 39 S. W. (2d) 1000, a $15,000 verdict in an action for the death of a boy 20 years of age was held not excessive. In Phillips' Committee v. Ward's Adm'r, 241 Ky. 25, 43 S. W. (2d) 331, a $20,000 judgment for the death of a boy 19 years of age was affirmed. The deceased, Winferd Hoover, had always worked on his father's farm and had never been employed for wages, but in view of his strength, intelligence, education, and industrious habits, he had potential earning capacity, and we are

not prepared to say the verdict is excessive. The jury had the right, without any evidence of earning power, to exercise their own judgment in the matter and determine the amount of damages the decedent's estate had suffered. City of Madisonville v. Nisbet's Adm'r, 270 Ky. 248, 109 S. W. (2d) 593.

It is finally insisted the trial court erred in refusing to permit the attorney for the appellant to argue to the jury that the amount of whatever verdict might be rendered would have to be paid by the taxpayers of Kentucky. It must be assumed that the members of the jury were reasonably intelligent men, and knew that any judgment against the Commonwealth would necessarily have to be paid out of taxes collected by it. Furthermore, the liability of the Commonwealth for the death of Winferd Hoover, and, if liability attached, the extent of the damages to his estate were the only questions to be determined by the jury. The source of the funds with which the judgment would be paid was not material.

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed.

Whole court sitting except Clay, J.