## Union Transfer & Storage Co. v. Fryman's Adm'r.

March 28, 1947.

Donald L. Wood, Judge.

Charles Wylie, Paul Mansfield, O. R. Bright and Lander Bright for appellant.

Harry Wallingford for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

From a judgment of $20,000 against the Union Transfer and Storage Company, this appeal has been prosecuted.

Ernie Fryman, a school boy nine years of age, while being transported home from school on a school bus belonging to Ernest Mitchell, was suddenly killed when a truck of the appellant Union Transfer and Storage Company, and the school bus collided.

Appellee, Albert Fryman, administrator of the estate of Ernie Fryman, deceased, brought this action against both the Union Transfer and Storage Company and Ernest Mitchell for damages to the estate of Ernie Fryman for the loss of earning power, services, death, and funeral expenses in the total sum of $40,135.

After the filing of answers and cross petitions by the co-defenants, issues were finally joined as between the plaintiff and the defendants, Union Transfer and Storage Company and Ernest Mitchell. Testimony was then offered by the appellee, plaintiff below, who then rested. Both co-defendants immediately moved the court for a peremptory instruction to find for them, which was promptly overruled. The co-defendants declined to introduce any evidence. The court then instructed the jury and the cause was submitted. Whereupon, the jury returned a verdict against the Union

Transfer and Storage Company alone in the sum of $20,000.

The appellant comes here insisting (1) that the appellee did not prove that the truck involved in the accident belonged to the appellant, or that at the time of the accident was being operated by an agent of the appellant, or that the agent was acting within the scope of his authority, and (2) that $20,000 damages is excessive for the loss of earning power to the estate of an infant 9 years of age who was being reared in modest circumstances.

If appellant is correct in his contentions under question (1) above, it was entitled to a peremptory instruction. Appellant insists that appellee did not introduce any testimony establishing the fact that the truck involved belonged to the appellant at the time of the collision; that since by answer it had denied the allegations of the appellee as to its being a corporation organized under the laws of the State of Kentucky, or that its truck collided with its co-defendant's school bus, it was then the duty of the appellee to prove the truck was owned by the appellant; that at the time of the collision it was being operated by an agent of the appellant; and that the agent was acting within the scope, or apparent scope, of his authority. In support of that position, Saunders' Ex'rs v. Armour & Co. et al., 220 Ky. 719, 295 S. W. 1014; Bickel Coal Co. v. Louisville Tire Co., 228 Ky. 239, 14 S. W. 2d 775, and Towles v. Perkins, 266 Ky. 25, 98 S. W. 2d 27, are cited, wherein is treated generally the character of proof necessary and the duties required in order to hold one responsible in damages for acts of another where the relation of principal and agent or master and servant exist.

Counsel for appellant in their brief, however, promptly and candidly admit their awareness of a line of cases holding in substance that the establishment of certain facts as to the color of the vehicle, etc., is sufficient to establish ownership.

Appellee strongly insists that the facts of this case are sufficient under the latter line of cases. Appellant is equally insistent on the applicability of the former line of cases.

Our task then is to determine whether or not appellee met the responsibility of showing that this was appellant's truck. We must, therefore, look at the record.

Clyde McCord testified as follows:

"Q. Alright, go ahead. What truck was it? What truck was it that the accident occurred with? A. Union Transfer Truck.

"Q. What school bus? A. Ernest Mitchell's school bus."

O. L. Wells, the Sheriff of Fleming County, who was called to the scene of the tragedy, testified as follows:

"C. Q. 3 What kind of truck was it? A. Chevrolet, I believe.

"C. Q. 4 How big? A. One of the Union Transfer cars—a great big truck—big body.

"C. Q. 5 Eight or ten feet wide and that high? A. Yes, sir, a great big one.

"C. Q. 6 Did you see any blood or hair on the Transfer truck? A. Yes, sir."

Herbert Fryman, on cross examination, in response to appellant's own counsel, testified as follows:

"Q. Did you see the Union Transfer Company truck? A. Yes, sir."

Under the above there is proof positive that it was Union Transfer Company's truck. These witnesses testified positively it was, and under this record there is no evidence of any attempt to break them down or to interrogate them as to how they knew. The response of the Sheriff, Wells, to one question is very significant, and is probably of more immediate impressiveness than the testimony of the other witnesses relative to this point. When he was asked how big the truck was, he replied: "One of the Union Transfer cars—a great big truck—big body." This response, obviously, means that there was more than one truck of the appellant operating in that section. There is nothing unusual or strange that people residing along this highway should so easily recognize the truck to be that of the Union Transfer and Storage Company. This Company is a well known trans-

fer company, and, most likely, there was a more or less frequent operation of its trucks over this highway.

This court has held that commercial vehicles, such as appellant's truck, when being operated, are being used in the course of the owner's business, and that the person in charge of this commercial vehicle is operating it in the business of the owner. In Webb v. Dixie-Ohio Express Co., 291 Ky. 692, 165 S. W. 2d 539, 540, we said:

"* * * Because it is often impossible for the plaintiff to prove the agency of the operator, it is deemed desirable socially that the burden of introducing evidence on nonagency should be placed upon the defendant in whose peculiar knowledge rests the material evidence essential to a determination of this fact. In applying the rule we perceive no sound reason for drawing a bare distinction between a pleasure car and a commercial vehicle in the absence of facts from which it could be presumed that the commercial vehicle was being used in the course of the owner's business. A truck, used in regular commerce over a prescribed route by authority of the governing body of the jurisdiction in which it operated (unlike a pleasure car or one owned by an individual not necessarily used in pursuit of commerce), should be presumed to be used in the course of its owner's business while operated over the designated route. It is a matter of common knowledge that a franchise holder rarely, if at all, permits the implement of its business to be employed outside the pursuit of business in which it is engaged, whereas pleasure cars and privately owned trucks are frequently operated on business other than that of the owner."

The above evidence we hold to be sufficient in establishing that the truck involved belonged to the appellant. The evidence of the scattered seed on the highway, as a result of the collision, leading directly to the truck, shows, no doubt, it was being used for the transportation of seeds, and presumably, on the business of the owner. It must be presumed that one operating a truck on business for the owner is the servant of the owner and in his employment. If that were not actually true, appellant, most likely, could have and would have proven otherwise. This they did not choose even to attempt to do. Conse-

quently, we hold they must fail under their first contention.

The second contention of appellant presents an extremely difficult proposition. Appellants insist that this court has never upheld a verdict in the amount of $20,-000 as compensatory damages to the estate of an infant nine years of age. True, there are instances where this court has held damages for less than that amount excessive.

In Louisville & Nashville R. R. Co. v. Creighton, 106 Ky. 42, 50 S. W. 227, 20 Ky. Law Rep. 1691, 1898, we held that a verdict for $10,500, as compensatory damages for the death of a child under four years of age, is excessive. It was also held by this Court in Board of Internal Improvements for Lincoln County v. Moore's Adm'r, 66 S. W. 417, 23 Ky. Law Rep. 1885, that a verdict for $15,000 for the death of a girl fourteen years of age is so excessive as to indicate passion or prejudice. In Illinois Central R. R. Co. v. Watson's Adm'r, 117 Ky. 374, 78 S. W. 175, 25 Ky. Law Rep. 1360, this court held that a verdict of $18,000 for the death of a boy nine years of age was palpably excessive.

Appellant contends that since the testimony discloses that Ernie Fryman was only nine years of age, and being one of eight children of a tenant farmer, with a mediocre social and economic position, an award in the sum of $20,000 was obviously excessive.

Appellee argues, and with some merit in the argument, that a $20,000 judgment now, due to increased cost of living, is worth barely a little more than ½ that amount a number of years ago. In determining whether or not the award is excessive, this element may justifiably be considered. In 16 Am. Jur., Death, Section 243, it is stated thus:

"In measuring verdicts in actions for wrongful death, it is proper to take into consideration the diminished purchasing power of money due to the increased cost of living."

In Ashland Sanitary Milk Co. v. Messersmith's

Adm'r, 236 Ky. 91, 32 S. W. 2d 727, 730, this court said:

"Lastly, it is insisted with great earnestness that the verdict is excessive. The case is not to be determined by decisions of the long ago. Within recent years the purchasing power of money has decreased, and the courts are inclined to uphold larger verdicts than they were accustomed to approve years ago. The deceased was sound in health and of fine mental attainments, with all the opportunities that are now open to the members of her sex. In a case of this kind it is the province of the jury to assess the damages, and our duty to give effect to its finding unless we can say the verdict is so excessive as to strike us at first blush as being the result of prejudice or passion. This we cannot do."

In upholding a judgment of $20,000 for the death of a nineteen year old boy in the case of Commonwealth v. Hoover's Adm'r, 274 Ky. 472, 118 S. W. 2d 741, 744, this court said:

"The appellant also insists that the verdict is excessive. In cases of this kind, the assessment of damages is the province of the jury, and the verdict will not be disturbed unless the amount of damages allowed is so large and disproportionate to the probable loss as to strike the mind at first blush as necessarily the result of passion and prejudice on the part of the jury."

In 48 A. L. R., commencing with page 837, will be found a long list of cases wherein awards ranged from $1,000 to $15,000, in which the amount of damages awarded to infant boys were not considered so excessive as to justify interference by the court.

Again we find in the same Section of Am. Jur. above, the following:

"The amount of damages recoverable in an action for death by wrongful act is one peculiarly within the province of the jury. It may be stated as a general rule, well supported by the authorities, that the finding of the jury will not be set aside as excessive, except in extreme cases, as where it is the result of passion, prejudice, partiality, sympathy, undue influence, or other

corrupt cause or motive, or where the court can clearly see that the jury has committed some palpable error or has totally mistaken the rules of law by which the damages, in the particular case, were to be measured. Thus, there is not sufficient authority for disturbing a verdict in an action for death by wrongful act that the jury has awarded a larger amount than the court thinks should have been awarded.''

While the above award of $20,000 might possibly seem at first blush to be very large, it was yet only about ½ of the amount sued for. It is true there is no way of anticipating what the future of this nine year old boy might be. Even though he be one of eight in a family, and a son of a tenant farmer, his life was none the less sacred. Our histories are filled with biographical sketches of boys who started from less promising situations and achieved in the world. Too, it is possible he could have become a dismal failure, but we cannot become the judges and forecasters of his future.

The courts generally are reluctant to interfere with the jury's verdict and set same aside as excessive unless it is so clearly and definitely excessive as to indicate that it was the result of passion and prejudice and a clear disregard of the evidence of the rules of law. There is nothing here to indicate passion and prejudice. We cannot see any reason here for usurping the prerogatives of the jury, or refusing to give weight to its findings.

Wherefore, the judgment is affirmed.