### Thixton v. Palmer, by, etc.

(Decided October 30, 1925.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1. Municipal Corporations—Contributory Negligence of Bicycle Rider Not Shown.—In action for injuries to bicycle rider struck by defendant's automobile, evidence held to show no contributory negligence on part of plaintiff.

2. Master and Servant—Son Driving Mother's Automobile Responsible for Negligence of One whom he Permits to Drive.—Where mother had intrusted her automobile with son, negligence of friend, whom son permitted to drive while he rode in back seat, would be negligence of son.

3. Master and Servant—Mother Allowing Son to Use Automobile Responsible for Negligence of One whom Son Permits to Drive.—Where mother had allowed her son use of automobile to take friend

and two girls riding she would be responsible for injuries resulting from negligence of friend, whom son had permitted to drive while he rode in back seat.

JOHN P. HASWELL for appellant.

L. FRANK WITHERS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

The appellant, who was defendant below, seeks to reverse a judgment for $535.00 recovered against her by the appellee as plaintiff below, for injuries alleged to have been sustained on March 21, 1918, when a bicycle which was then being ridden by plaintiff was struck by an automobile belonging to the defendant. Defendant's automobile was a Ford touring car which she had bought for the use of herself and her son. On this evening defendant's son, George T. Thixton, had arranged with a friend of his, Allen Douglas, to go with him to a picture show, and it was their intention to take with them two of their lady friends. Young Thixton obtained his mother's permission to use her car, and left home with Douglas, who was only a friend and not related to him in any way, and drove to the home of a Miss Kaiser, a friend of young Thixton. This young woman was expecting them, and was ready. She and young Thixton got into the rear seat of the automobile. Young Douglas drove the car to the home of a Miss Margery Bane in that part of Louisville known as Parkland. Miss Bane got into the front seat of the automobile with Douglas, and the four of them started up Twenty-eighth street on their way to the show. It was then about eight o'clock in the evening, and rather dark. At that time the plaintiff was coming south on Twenty-eighth street. He had broken the pedal off of his bicycle and was riding next to the right-hand or west curb of the street, and propelling the bicycle by putting his right foot upon the curbing and pushing the bicycle along. As the automobile went north on Twenty-eighth street, it got into the car tracks, and they had some difficulty in getting it out of the tracks. They were endeavoring to do so by what they termed "zigzagging" the machine. As a result of their efforts to get out of the tracks, the car suddenly left the tracks, darted across the street to the west or left-hand side, according to the direction the car was going, and before it could be stopped

struck the plaintiff's bicycle, knocked it over on to the sidewalk, thus throwing plaintiff therefrom, and injuring his knees. This injury caused a serious synovial swelling, which the physician who attended plaintiff called a bursitis, and resulted in what the physician describes as a fibrotic condition of the knee joint. When this case was tried on March 12, 1924, there appeared to be little seedlike bodies that could be felt in the young man's knee, just below the knee cap, as a result of which his knee has been partially stiffened.

At the conclusion of the evidence the defendant moved the court to instruct the jury peremptorily to find for defendant, which motion was overruled. Defendant excepted; thereupon plaintiff moved the court to instruct the jury peremptorily to find a verdict for the plaintiff, to which defendant objected. The objection was overruled, and the jury was instructed peremptorily to find a

Defendant had pleaded contributory negligence on verdict for plaintiff, to which defendant excepted. the part of the plaintiff, and moved the court to give an instruction thereon, which the court declined to do, and defendant excepted. These are the grounds upon which we are asked to reverse this judgment.

Addressing ourselves first to the refusal of the court to instruct on contributory negligence, it is sufficient to say that there was no evidence of any negligence upon the part of the plaintiff. Some of defendant's witnesses testified that they did not see any light on the plaintiff's bicycle, but were unable to say that there was none on it. Plaintiff testified that he had a carbide light on his bicycle, and it was burning brightly; thus there was no evidence of any negligence on the part of plaintiff to be submitted to the jury, and the court's refusal to instruct on that feature of the case is approved.

Returning to the action of the court in instructing the jury to find a verdict for the plaintiff, we find these to be the salient facts: Young Thixton, to whom defendant had entrusted the driving of the automobile, was not driving at the time of the accident, and the car was being driven by young Douglas, who was in no wise related to defendant, and who had no instruction or permission from the defendant to operate the car. The question presented is, can the defendant, after she entrusted the operation of her car to her son, be held liable for the negligence of another, to whom the son in turn entrusted the

operation of the car? Many of the cases which we find on this question go back to a case in England, and are rested upon an opinion rendered by Lord Abinger, C. B., in the case of Booth v. Mister, reported in 7 Sergeant & Pettitt 66, 32 English Common Law Reports, 439. In that case Usher, who was the servant of the defendant, and who had been placed in charge of a cart, entrusted the driving of the cart to a stranger, whom Usher allowed to take the reins, and with whom he was riding at the time of the accident. It was insisted that defendant was not liable because the plaintiff's allegation that the cart was driven by the defendant's servant, Usher, was not sustained by the evidence. Lord Abinger in his opinion said, "As the defendant's servant, Usher, was in the cart, I think that the reins being held by another man makes no difference. It was the same as if the servant had held them himself."

In the case of Geiss v. Twin City Taxicab Co., 120 Minn. 368, 139 N. W. 611, 45 L. R. A. (N. S.) 382, the defendant's servant, Connolly, had been sent in a car to a shop to procure a piece of pipe for some repair work. At the shop one Vielleux climbed into the driver's seat, took the wheel and Connolly took the rear seat. They started to make a drive for the purpose of testing the car, and while so engaged Geiss was struck and injured. In that case it was held that where the master's servant is present and consents to the performance by another of some of the servant's duties, and those duties are performed in the presence of the servant in a negligent manner, as a result of which some one is injured, the master is responsible.

In the case of Kayser v. Van Nest, 125 Minn. 277, 146 N. W. 1091, 51 L. R. A. (N. S.) 970, a father kept an automobile for the pleasure of his family. It was usually driven by his daughter, nineteen years of age. On the occasion of the accident, while driving she was joined by a party of young people, and she permitted a cousin to drive the car. The court in that case said:

"The daughter remained in the car, and, although not personally operating it, had not relinquished control over it, nor turned it over to another to use for his own purposes. It was still being used in furtherance of the purpose for which she had taken it out."

In the case of Slothower v. Clark, 191 Mo. App. 105, 179 S. W. 55, the owner had instructed his chauffeur to take the car to the garage. On the way the chauffeur picked up one Sweeney whom he permitted to drive the car, and a collision occurred. The court said:

"It is insisted that at the time of the collision Sweeney was running the machine, the chauffeur, as we have seen, having permitted him to take charge of the steering wheel, he sitting beside him. At the trial the parties seemed to consider it was necessary to show that at the time of the collision the chauffeur was driving. In view of the evidence we think that it is a matter of no consequence or importance. When the chauffeur let Sweeney take the wheel, he remaining on the seat beside him, Sweeney's acts, practically speaking, were his, and his act in turning the wheel over to Sweeney was the act of defendant, for it was done in the defendant's service and while carrying out the chauffeur's employment."

In James v. Muehlebach, 34 Mo. App. 512, the court said:

"If a servant in charge of his master's carriage should take a stranger with him into the driver's seat, hand him the reins and tell him to drive at a run, and an injury happen in consequence of the speed, the master must answer for the damage, for the negligence was that of his servant. But not so if the servant had quit the carriage and substituted the stranger in charge generally in his stead, without the knowledge of the master. For if an injury happen, it is not the act of the servant for whom only is the master liable."

See also Miller v. Weck, 186 Ky. 552, 217 S. W. 904, and Lashbrook v. Patten, 62 Ky. (1st Duv.) 317.

From the reasoning in these cases, we are convinced that the negligence of Douglas was the negligence of Thixton, who was riding with him and permitting him to operate the car. This leaves for our determination solely the question: Would the defendant have been responsible for this negligence if young Thixton had been driving?

In the case of Lashbrook v. Patten, *supra,* young Lashbrook, a minor, while driving his two sisters to a

picnic in his father's carriage, drawn by his father's horses and with his father's approbation, negligently ran against Patten's carriage, as a result of which it was overturned and Patten's daughter injured. This court held that the son must be regarded as engaged in his father's employment, discharging a duty usually performed by a slave, and, therefore, must, for the purpose of this suit, be regarded as his father's servant. The judgment obtained against the elder Lashbrook was upheld.

Upon the authority of that case this court, in the case of Stowe v. Morris, 147 Ky. 386, 144 S. W. 52, 39 L. R. A. (N. S.) 224, announced what is frequently called the "family purpose doctrine," and upheld a judgment for $2,000.00, obtained by the Morris child against R. T. Stowe for injuries received by the child through the negligence of Stowe's eighteen-year-old son, Robert, who was then operating a car belonging to the elder Stowe in which his sister, a cousin and two other young ladies were riding.

In the case of Miller v. Weck, *supra,* this court adhered to the doctrine announced in the case of Stowe v. Morris, and upon it rested its opinion upholding a judgment obtained against Zachary T. Miller for injuries resulting from the negligence of his infant son, L. D. Miller, in the operation of the elder Miller's car.

Under the last three cases, the defendant would unquestionably be liable for the negligence of her son, and upon the authority of the other cases cited, the trial court correctly held her responsible for the negligence of Douglas, to whom her son had entrusted the operation of the car at a time when the son was still in the car. The jury's verdict is supported by the evidence. The judgment is affirmed.

The whole court sitting.