## TURNER v. HALL'S ADM'X.

Court of Appeals of Kentucky.
Oct. 24, 1952.

G. D. Milliken, Sr., G. D. Milliken, Jr., Bowling Green, for appellant.

William H. Natcher, Bowling Green, for appellee.

MOREMEN, Justice.

This is an appeal from a judgment in the sum of $20,000 rendered in favor of the appellee for damages to the estate of Rachel Hall, deceased. The appellee, Mrs. Jewell Hines, is the mother of Rachel Hall and was appointed the administratrix of her estate.

The appellant, Bunie Turner, is a farmer residing with his wife and 16 year old son, Arnold Turner, on a farm in Warren County, Kentucky. Arnold is a student in the sophomore year in the Warren County High School. On October 13, 1951, he drove the family automobile, a 1950 Plymouth Sedan, to school. When school was dismissed at 11:30 a.m. he invited five of his schoolmates to ride with him into the nearby city of Bowling Green. These students went to Bowling Green to sell tickets on a ham which was to be raffled for the benefit of the senior class of the Warren County High School. In Bowling Green, Arnold met his father who purchased a jacket for him. Arnold then rejoined his schoolmates. When all the tickets on the ham were sold, they went back to school in order to obtain more tickets. Being unable to obtain tickets at the school, they proceeded to go to the home of Katherine Hendricks, another student who lived on Russellville Road, in order to obtain tickets from her. Joe Anderson, Arnold's schoolmate, drove the car out Russellville Road for the purpose of obtaining these tickets. Joe Anderson, Arnold Turner, and another boy were in the front seat. Three girls, including the deceased, were in the rear seat.

As Anderson was driving along Russellville Road he attempted to pass two vehicles, a passenger car and a truck. As he was trying to pass the truck, the truck began to turn left into a driveway causing the Plymouth to collide with the truck. The Plymouth turned over, resulting in the death of Rachel Hall.

The appellant, Bunie Turner, was the owner and driver of the truck and also the owner of the passenger car which collided with it. The appellee alleges the appellant is liable for damages for the death of Rachel Hall because of (1) liability based on appellant's negligence and (2) liability based on the "Family Purpose Doctrine" due to the fact that it was appellant's car, which was under the control of his son, that collided with his truck.

The appellant contends that the circuit court erred in its instructions to the jury on the liability of appellant under the Family Purpose Doctrine. This instruction reads:

"The Court also tells the jury that if they believe from the evidence the automobile colliding with the truck was maintained by the defendant, Bunie Turner, for the use, pleasure and convenience of his family and that his son, Arnold Turner, was permitted by him to drive such automobile back and forth and to and from school unaccompanied by the defendant or other members of his family, and that on the day of the collision referred to in the testimony, such son was given the sole possession and control of the said automobile for that purpose, then his said son was on the occasion of the collision between the automobile and the truck, the agent of his father, the defendant herein, and if his said son permitted a companion, Joe Anderson, to drive the said automobile on the occasion referred to in the testimony and was present in such car at the time and consenting that said Anderson should do so, then in law the said Anderson in driving the said automobile was likewise the agent of the defendant, Bunie Turner, at the time of the collision between the two cars."

Appellant insists the court should also have instructed the jury that if appellant's son used the automobile for an unauthorized purpose or allowed another to drive the car without authority or permitted others to be guests in the car against appellant's specific instructions, then the son acted outside the scope of his authority and appellant was thereby released from liability under the Family Purpose Doctrine.

■ We have said in a number of cases that the Family Purpose Doctrine is based upon the relationship of principal and agent or master and servant, and is applied in cases where one maintains an automobile for the pleasure and use of other members of his family. U. S. Fidelity & Guaranty Co. v. Brann, 297 Ky. 381, 180 S.W.2d 102; Myers' Adm'x v. Brown, 250 Ky. 64, 61 S. W.2d 1052.

This doctrine is not a new one that has arisen since use of the automobile became general. In Lashbrook v. Patten, 1864, 62 Ky. 317 this court held a father responsible for his minor son's negligent act "whilst driving his two sisters to a 'picnic,' in his father's carriage, drawn by his father's horses, with his father's approbation," saying, "The son must be regarded as in the father's employment, discharging a duty usually performed by a slave and therefore must, for the purposes of this suit, be regarded as his father's servant."

In many cases since that date we have applied this rule of parental responsibility where a child was using the car for one of the purposes for which it had been obtained, and, while the liability of the parent arises out of the fiction of master and servant, still the principles generally applicable to a commercial relationship of master and servant are not always appropriate to a consideration involving the family relationship.

■ The act of a parent who has purchased and who keeps an automobile for family use does not involve the same principle of law as does the act of an owner in lending his machine to his servant when that servant is not engaged in the performance of the master's business. Where the automobile is purely a business vehicle we apply strict rules concerning deviation by the servant from the path of his employment, but in cases where the vehicle is maintained for the use of the family, the first determination that must be made is whether or not at the time of the accident the car was being devoted to that use.

An examination of the facts presented by the testimony discloses that appellant's family consists of himself, his wife, and his child Arnold, age 16. Arnold had been driving his father's automobile since the time he enrolled at the Warren County High School. He used it to attend athletic contests and other extra curricular activities of the school. On several occasions before the accident other students had accompanied Arnold on pleasure trips.

We are therefore presented with the question as to whether or not appellant, after giving permission to his son to use the car for the purposes for which it had been purchased, could limit the extent of his liability by specific instructions to his son concerning the manner and extent of its operation while the son was in fact using the car.

■ The Family Purpose Doctrine is a humanitarian one designed for the protection of the public generally, and resulted from recognition of the fact that in the vast majority of instances an infant has not sufficient property in his own right to indemnify one who may suffer from his negligent act.

We believe the purposes of this doctrine would be destroyed entirely if a father could relieve himself of responsibility by specific instructions known only to himself and his son. Even in cases of the strict commercial relationship of master and servant, the courts have not permitted such a limitation. In Restatement of the Law, Agency, page 533, the rule is stated thus: "On the other hand, the master cannot relieve himself from liability to third persons by an agreement with the servant that the relationship between them shall immediately cease upon the performance by the servant of a criminal, tortious or disobedient act during the course of conduct within the scope of the employment."

■ Not all state courts have accepted the Family Purpose Doctrine and some states have been more liberal in its application than others. This state has fixed as the criteria for liability the determination, first, of whether or not the car was purchased and operated for general family use and, second, whether the young person in charge of the car had the actual or implied consent of the owner. A leading

case, which illustrates our liberal attitude, is Thixton v. Palmer, 210 Ky. 838, 276 S. W. 971, 44 A.L.R. 1379, where a mother had allowed her son use of the automobile to take a friend and two girls riding. The son permitted the friend to drive and the mother was held responsible for injuries resulting from his negligence. The basis of the holding seemed to be that once she had entrusted the operation of the car to her son she was responsible for his actions even to the extent of delegating his right to operate it to a friend. Of this case in Wells v. Lockhart, 258 Ky. 698, 81 S.W.2d 5, 6, we said:

> "If young Wells had charge of the car at the time with the implied consent or passive acquiescence of his father, * * * then under the doctrine applied by us in the case of Thixton v. Palmer, 210 Ky. 838, 276 S.W. 971, 44 A.L.R. 1379, and cases therein referred to, he (the father) would be liable for any negligence or injuries inflicted by his son while the car was being operated when in the possession of the latter and while under his control."

In the Wells case some incompetent evidence concerning the right of a parent to limit the use of a car was introduced but the court properly held that it was incompetent and the main question was not decided.

We have found no case in Kentucky exactly in point, but we believe the opinion in Evans v. Caldwell, 184 Ga. 203, 190 S.E. 582, 583 correctly stated the theory acceptable to this court when it said:

> "The application of the law of master and servant or of principal and agent to the 'family-car doctrine' is not without difficulty. However, the courts of this state are committed to that doctrine. If the automobile is a family-purpose car, and used by the minor children for their pleasure, comfort, and enjoyment, the car, when used for such purposes, is being used in the prosecution of the business of the parent or master, and the children are acting within the scope of their employment in the parent's or master's busi-

ness. If the car is used for such purpose with the permission and consent of the parent, either express or implied, even though on the particular occasion the parent limits the use of the car to a particular destination and return, such limitation is not a limitation on the purpose for which the car is being used. The purpose for which the car is being used and for which consent is given is the pleasure, comfort, and enjoyment of the child. Therefore, if the child disobey the parent and use the car for the same purpose but in a different locality, he is still engaged in the business of the parent, and the parent is liable for the negligence of the child while so engaged. So long as the child uses the car for the purposes of pleasure, comfort, and enjoyment, no question of deviation arises, but only a question of disobedience of instructions. * * *"

▮ We have therefore concluded that the instruction given was proper, in this respect.

Appellant also contends that the court erred in that part of the instruction concerning the liability of appellant when his son permitted another to drive. The only distinction between the present case and the Thixton case is that here the father testified he had expressly told his son not to allow anyone else to drive. This distinguishing point has never been before this court. However, under the rationale of the Thixton case it becomes manifest that an express prohibition should not release the father from liability. The same principle is involved regardless of whether there is an express prohibition or merely a lack of permission. No consent was given in either case.

In the Thixton case, we reasoned that it was not necessary to establish a master and servant relationship directly between the mother and the third party and that, even though the car was driven by a stranger, it was still being used for family purposes when the son was present and enjoying its use. The original consent by the parent is the vital one.

We believe the court's instruction on this point was correct.

█ Appellant complains next of bias and misconduct of the jury. In affidavits, filed in support of motion and grounds for a new trial, it was stated that each juror on voir dire examination was asked if he knew any facts concerning the case to be tried, and each gave a negative response. It was charged by several affiants that two jurors—who were not identified by name—made the statement during the considera-tion of the case by the jury, that appellant was covered by ample insurance. From this, it is argued that the informants must have had this intelligence when the voir dire was had and, therefore, had made a false statement.

We are committed to the rule that a jury's verdict may not be impeached by a juror's testimony concerning conduct in the jury room. Pollack v. Southern Ry. Co. in Kentucky, 220 Ky. 302, 295 S.W. 150. We have applied to civil cases the force of Section 272, Criminal Code of Practice, which reads: "A juror can not be examined to establish a ground for a new trial, except it be to establish that the ver-dict was made by lot." Ralston v. Dossey, 289 Ky. 40, 157 S.W.2d 739.

█ It is true that in Drury v. Franke, 247 Ky. 758, 57 S.W.2d 969, 88 A.L.R. 917, it was said that examination of a juror rel-ative to the truth of answers made on voir dire did not violate the rule, but that case presented a situation different in fact from the one under consideration. In that case, it was learned after the trial that four jurors, who had remained silent on voir dire when asked if they had ever been in automobile collisions, had, in fact, been in such collisions. They were called together and statements were taken which disclosed that they had been in collisions. It was said that this did not violate the rule. How-ever, in the instant case the affiants made statements concerning the alleged remarks of two other jurors in the jury room, after retirement. It cannot be inferred from the affidavits filed that the offending jurors, if they made such statements, had any such knowledge when first examined on voir dire. There was no confession here by the jurors, themselves, that they had suppressed information. It was only a portion of the jurors attempting to impeach other jurors because of alleged actions performed in the jury room.

Appellant next urges that the verdict of the jury was the result of coercion on the part of the court in remarks made to the jury after submission of the case. About an hour after the case was submitted to the jury they reported that they had been unable to reach a decision. The court recessed for an hour for lunch and, upon return to the court room, orally instructed the jury in substance as follows:

"In considering your verdict in this case one should be tolerant of the views of the other members of the jury. The decision is to be reached by the entire jury consisting of twelve mem-bers and not by the decision of one man. If the decision was to be reached by one man only, it would be an easy task but where there are twelve mem-bers of the jury perhaps all of them have different views concerning the verdict which should be reached and for that reason it is necessary that each member of the jury be tolerant of the views of the other members of the jury. In the words of the Apostle Paul 'we should not be too stubborn in our conceits' so I request that each of you not to be stubborn in your own views and to be tolerant of the views of the other members of the jury so now go out to your jury room and strive to reach a verdict."

█ We believe the foregoing instruc-tion contains wholesome advice and find nothing prejudicial in it. In any event, the record does not show that exception was taken by appellant to the remarks at the time and it is now too late to object in this court. Louisville & N. R. Co. v. Vaughan's Adm'r, 183 Ky. 829, 210 S.W. 938. There is, therefore, no merit in this complaint.

█ Appellant's last contention is that the award of $20,000 is excessive. The young lady, who was killed in this accident, was a senior in high school, in perfect

health, and had a long life expectancy. The burial expenses were shown to be $797.89. We do not believe the award of damages in this case is excessive. We have held in several cases that similar amounts were not of such a character as clearly or definitely to indicate that they were the result of passion or prejudice or in clear disregard of the evidence or of the rules of law. Commonwealth v. Hoover's 'Adm'r, 274 Ky. 472, 118 S.W.2d 741; Union Transfer & Storage Co. v. Fryman's Adm'r, 304 Ky. 422, 200 S.W.2d 953.

The judgment is affirmed.