**RICHARDSON v. TRUE et al. (two cases).**

Court of Appeals of Kentucky.

June 5, 1953.

Marshall A. Dawson, Versailles, for appellants.

J. P. Karem, Karem & Karem, Louisville, for appellees.

COMBS, Justice.

These cases grow out of a collision between an automobile driven by Howard True, Jr., age 18, and a pickup truck driven by the appellant Clell Richardson. Maggie Richardson, the other appellant, is the wife of Clell Richardson and was injured in the accident. Suits were filed by the Richardsons against Howard True, Jr. and his parents, Mr. and Mrs. Howard True, Sr. Judgments were obtained against the son but the court directed verdicts in favor of his parents. There is no appeal from the judgment against the son. The Richardsons contend on this appeal that the court should have submitted to the jury the case against Mr. and Mrs. Howard True, Sr. under the Family Purpose Doctrine.

The Family Purpose Doctrine is firmly established in this jurisdiction. It has been said the doctrine is based upon the implied relationship of principal and agent and is applied in those cases where a person maintains an automobile for the use and pleasure of other members of the family. The doctrine is based on humanitarian principles designed to protect the public generally and has resulted from recognition of the fact that in most cases an infant does not have sufficient property in his own right to indemnify one who may suffer from his negligent acts. Turner v. Hall's Adm'x, Ky., 252 S.W.2d 30.

The automobile involved in this action was owned and maintained by Mrs. Howard True, Sr. The son was a student at DuPont Manual High School in Louisville

and lived with his parents. At the time of the accident he and three of his schoolmates were en route to Lexington to attend a basketball game.

Mrs. True testified she did not give her son permission to use the car on the night in question, but left the car keys on a chifforobe, the place where she usually kept them. Her son had obtained the keys and used the car on previous occasions without her permission. She knew he had taken the keys before but had never attempted to hide the keys because: "You would hate to think you had to hide something from your child." She had always objected to her son driving the car on trips outside the City of Louisville.

The testimony of Howard True, Jr. may best be understood from these excerpts:

"Q. Whose car were you driving? A. Mother's.

"Q. Does she own the car? A. Yes.

"Q. What is it used for? A. It was her personal car. She used it to go to work in.

"Q. How often do you use it? A. Two or three times a year, at the most.

"Q. Had you ever taken it before without her permission or with her permission? A. Yes, both.

"Q. Have you gone to school in the car? A. Yes, sir.

"Q. How often? A. Well, maybe two or three times a week sometimes, and sometimes not so much.

"Q. How many times did you use it without her permission? A. I can't state that.

"Q. Did you use it twice without her permission? A. Yes.

"Q. Four times? A. More than that.

"Q. Eight times? A. No, not that much.

"Q. How long had she had the car? A. Eighteen months.

"Q. When you went to school in it did you go then without her permission? A. No.

"Q. What about basketball games? A. I didn't go in that.

"Q. Where did you use it? A. I would go to the grocery or any place; there isn't any use walking when there is a car at home.

"Q. You don't believe in walking when there is a car around? A. No, sir.

"Q. Did you use it on dates? A. Yes, I have.

"Q. Did you use it with her permission? A. Yes."

Omar Terry, a school friend of Howard, Jr., testified he knew the car Howard usually drove and identified it as the one involved in the accident. He had seen him in it "many times" and knew of at least two occasions when Howard had driven the car to basketball games.

 Howard True, Sr. testified as to the relationship of the family and the use of the automobile involved in the accident. He testified he owned a car, which was the one ordinarily used·by his son, and that his wife's car was used, owned, and maintained solely by her. Since there was no testimony that the father owned or maintained the car in question, the court properly directed a verdict in his favor. But the evidence in reference to Mrs. True presents a different question. The attitude of this Court on the Family Purpose Doctrine is stated in the case of Turner v. Hall's Adm'x, referred to above, 252 S.W.2d 30, 32:

"This state has fixed as the criteria for liability the determination, first, of whether or not the car was purchased and operated for general family use and, second, whether the young person in charge of the car had the actual or implied consent of the owner. A leading case, which illustrates our liberal attitude, is Thixton v. Palmer, 210 Ky. 838, 276 S.W. 971, 44 A.L.R. 1379 * * *."

The rule applies with equal force whether the car is owned by the mother or the father of the child. Steele v. Age's Adm'x, 233 Ky. 714, 26 S.W.2d 563.

The question of the parent's liability when the child has taken the car without express permission has been discussed in several cases. In Sale v. Atkins, 206 Ky. 224, 267 S.W. 223, it was said that the parent is not liable where the child has surreptitiously obtained possession of the car without the parent's consent and against instructions; but that there may be liability where it is the child's custom or privilege to take the car and the parent knows of the custom. This rule was followed in Wells v. Lockhart, 258 Ky. 698, 81 S.W.2d 5, where the jury determined that the child was operating the car with the implied or tacit consent of the parent because of prior customary use of the car.

Although it appears Mrs. True had objected to her son taking the car out of the City of Louisville, the fact that he disobeyed her and was on his way to Lexington does not of itself relieve her of liability. In the Turner case, referred to above, this Court quoted with approval these words from Evans v. Caldwell, 184 Ga. 203, 190 S.E. 582:

"* * * The purpose for which the car is being used and for which consent is given is the pleasure, comfort, and enjoyment of the child. Therefore, if · the child disobey the parent and use the car for the same purpose but in a different locality, he is still engaged in the business of the parent, and the parent is liable for the negligence of the child while so engaged. So long as the child uses the car for the purposes of pleasure, · comfort, and enjoyment, no question of deviation arises, but only a question of disobedience of instructions. * * *"

We are of the opinion there was sufficient evidence in this case to submit to the jury the question whether the son was using his mother's car with her implied or tacit consent at the time of the accident.

The judgment is affirmed as to Howard True, Sr.; the judgment is reversed as to Mrs. True, and the case is remanded for proceedings consistent with this opinion.