FIRST–CITY BANK & TRUST COMPANY, Administrator of the Estate of Annie Poindexter, Deceased, Appellant,

v.

Thomas Allen DOGGETT et al., Appellees.

Henry G. POINDEXTER et al., Appellants,

v.

Ollie BAGLEY et al., Appellees.

Henry G. POINDEXTER, Appellant,

v.

Thomas. Allen DOGGETT et al., Appellees.

Henry G. POINDEXTER et al., Appellants,

v.

Mrs. Allen DOGGETT et al., Appellees.

Court of Appeals of Kentucky.

Sept. 19, 1958.

W. E. Rogers, Jr., and James P. Hanratty, Hopkinsville, for First-City Bank & Trust Co., Administrator of the estate of Annie Poindexter, Deceased.

Trimble, Soyars, Keith & Breathitt, Hopkinsville, for Thomas Allen Doggett.

W. H. Southall and Stephen P. White, Jr., Hopkinsville, for Lawrence Riegel, Jr., Lawrence Riegel, Sr., and Estelle C. Riegel.

James P. Hanratty, Hopkinsville, for Henry G. Poindexter.

B. H. Henard, Hopkinsville, and Braley Craig, Lewisburg, for Ollie Bagley and Mrs. Allen Doggett.

CULLEN, Commissioner.

As the result of a collision involving three automobiles, four actions for damages were filed. Prior to the collision the automobiles had been proceeding along the highway in the same direction, one behind the other. The first automobile was driven by Lawrence Riegel, Jr., and was owned by his mother, Estelle Riegel. The second one was driven by Henry Poindexter and was owned by his wife, who was with him in the car. The third one was driven and owned by Thomas Doggett, and with him in his car were his wife and Mrs. Ollie Bagley. Mrs. Poindexter was killed, and Mr. Poindexter, Mrs. Doggett and Mrs. Bagley were injured.

In one action, Mrs. Bagley sued Mr. Poindexter, Lawrence Riegel, Estelle Riegel, and Mr. Doggett. In the second action, Mrs. Doggett sued Mr. Poindexter and the Riegels. In the third action Mr. Poindexter sued the Riegels and Mr. Doggett. In the fourth action Mrs. Poindexter's administrator sued the Riegels and Mr. Doggett. The four actions were tried together. In the three actions in which Mr. Doggett was a defendant he was given

a directed verdict. In all four actions the court instructed the jury that if Lawrence Riegel was held liable, his mother also was liable under the family purpose doctrine. In the actions by Mrs. Bagley and Mrs. Doggett, verdicts were returned awarding damages against Mr. Poindexter and the Riegels. In the actions by Mr. Poindexter and the administrator of Mrs. Poindexter, the jury denied recovery, on the ground of contributory negligence. Judgments were entered upon the verdicts.

The Riegels and Mr. Poindexter have appealed from the judgment in favor of Mrs. Bagley, which was for $10,000, and have moved for an appeal from the judgment in favor of Mrs. Doggett, which was for $800. The two Riegels and Mr. Poindexter contend that the court erred in giving a directed verdict in favor of Mr. Doggett. The two Riegels also contend that the damages awarded Mrs. Bagley are excessive. Mrs. Riegel maintains that the court erred in ruling as a matter of law that she was liable under the family purpose doctrine.

Mr. Poindexter and the administrator of Mrs. Poindexter have appealed from the judgments in the actions in which they were plaintiffs, maintaining that prejudicial error was committed in the giving of a directed verdict for Mr. Doggett in those actions.

We will consider first the alleged error in the giving of a directed verdict in favor of Mr. Doggett. A brief statement of the circumstances of the accident is necessary.

The three cars were proceeding in the same direction, on a country road, early on a Sunday afternoon in February. As they approached the point of collision all were traveling at around 30 miles per hour, with Riegel in front, Poindexter behind him, and Doggett behind Poindexter. Poindexter testified he was around 70 feet back of the Riegel car, and Doggett testified he was two or three car lengths back of the Poindexter car. Poindexter's testimony was that Riegel stopped his car abruptly, requiring Poindexter to apply his brakes to avoid a collision. When he applied his brakes his car swerved or skidded across the road to the left, and then skidded down the road sideways in the left traffic lane, with the front pointed towards the Riegel car. The Doggett car, coming on in the left traffic lane, then hit the Poindexter car squarely in the right side.

Doggett agreed that the Riegel car either stopped or slowed almost to a stop, but his testimony was that the Poindexter car pulled normally into the left lane to pass the Riegel car in a routine manner, and Doggett simply followed him into the left lane with the view of also passing the Riegel car; however, Poindexter went too far to his left and got a wheel off on the shoulder, which caused the Poindexter car to skid suddenly across the road and stop directly in Doggett's path. Doggett said that when the Riegel car stopped or slowed down he also could have stopped, but there was no reason to do so as the Poindexter car was proceeding to pass normally on the left and there was nothing to indicate that he could not do the same with safety. He admitted that he did not stop or slow down, and his passenger, Mrs. Bagley, said that "He put it in passing gear and it shot like a bullet."

If Poindexter's story should be accepted as true (and the jury was entitled to so accept it), the Poindexter car did not enter the left lane in a normal passing movement, but skidded into that lane with the brakes on. Doggett, then, was on notice before he entered the left lane that the Poindexter car was in trouble and out of control. According to Doggett's own testimony, he could have stopped in the right lane behind the Riegel car. For him, instead, to enter the left lane without slowing down, following a car that was plainly out of control, could hardly be considered an exercise of ordinary care.

There is nothing in the record to render unworthy of belief Poindexter's story that he skidded into the left lane before skidding sidewise down that lane, or to require

acceptance of Doggett's story that the skidding did not commence until after Poindexter had made a normal entry into the left lane.

█ It is our opinion that a jury question was presented as to Doggett's negligence, and that the trial court erred in directing a verdict in his favor.

█ Various suggestions have been advanced by the parties as to the proper disposition of these cases in the event of our decision that directing a verdict for Doggett was error. One suggestion is that the judgment in favor of Mrs. Doggett, in the one action of the four in which Mr. Doggett was not a party, should stand. Another is that the verdicts in favor of both Mrs. Doggett and Mrs. Bagley should stand as to the amount of damages, and a new trial be held only as to liability between the various defendants.

In view of the fact that all four actions were tried together, and that the direction of the verdict for Doggett could well have influenced the jury's decision on all of the other issues of fact in the four cases, we think that justice can best be achieved by reversing all of the judgments and directing that a new trial be had of all four cases.

As stated at the outset of this opinion, the appellant Mrs. Riegel contends that the court erred in ruling as a matter of law that the family purpose doctrine applied. Since this question may arise again upon a new trial, we believe it requires our consideration.

The Riegel family lives in the country, about two miles from the village of Pembroke and about twelve miles from the city of Hopkinsville. The son, Lawrence, was 20 years of age at the time of the accident, and was at the time unemployed, although he previously had held a job as a truck driver. The family owned one car, which was in the name of Mrs. Riegel. The husband and father held a job which required him to be away from home from Monday through Friday each week, and during his absence Lawrence was the only member of the family who drove the car. He used the car for all the family errands, and when he was employed he had used the car in going to and from his work. He also was permitted to use the car at least once a week for pleasure purposes. Customarily he asked and received his mother's permission to take the car, although there had been occasions when he had not considered it necessary to ask for permission. The car usually was parked in the driveway when not in use, with the keys in it.

The accident occurred on a Sunday afternoon. On the preceding Saturday evening Lawrence had taken the car, with the permission of his parents, on a pleasure trip to Hopkinsville, and upon returning home he brought a young friend with him to spend the night, as he had done on previous occasions. The next morning, according to the testimony of the Riegels, Lawrence asked his mother for permission to use the car in order to take his friend home, but she refused permission on the ground that she might need the car in order to visit her doctor. Notwithstanding that he had been refused permission, he took the car anyway, his younger brother and his friend going with him. They went to the friend's house, where they ate dinner, and were "riding around" in the afternoon when the accident occurred. Lawrence's parents knew that he had taken the car, but they made no effort to locate him by telephone and direct him to return it.

There was evidence by persons in the community that Lawrence often was seen driving the car.

It is the contention of Mrs. Riegel that *consent* to use of the car is an essential element of the family purpose doctrine, and that although implied or tacit consent may be sufficient, it was a jury question under the evidence in this case as to whether the customary usage and other surrounding circumstances amounted to the giving of

tacit or implied consent, notwithstanding the testimony as to an express refusal of permission on this particular occasion.

■ Although the courts have used some principal and agent analogies in working out the family purpose doctrine, the doctrine is not really based on principles of agency, but rather on "justice or supposed necessity," McNamara v. Prather, 277 Ky. 754, 127 S.W.2d 160, 161, or "humanitarian principles designed to protect the public," Richardson v. True, Ky., 259 S.W.2d 70, 71. The theory seems to be that the parent, as the one who has made the automobile available for use, and who is ordinarily the only financially responsible person who could be held chargeable, should bear the liability as a matter of public policy.

We have held that a deviation from the terms of consent will not relieve the parent. In Turner v. Hall's Adm'x, Ky., 252 S.W. 2d 30, the child had been given specific instructions not to let anyone else drive the car. In violation of these instructions he permitted a friend to drive, and an accident occurred. In holding the parent liable, the Court said (252 S.W.2d 30, at page 32):

"We believe the purposes of this doctrine would be destroyed entirely if a father could relieve himself of responsibility by specific instructions known only to himself and his son. * * *"

In Richardson v. True, Ky., 259 S.W.2d 70, the parent was held liable notwithstanding that the child had disobeyed the parent's orders not to take the car out of the city in which they lived.

It has been held that the fact that the child took the car on the particular occasion without consent or against specific orders will not as a matter of law relieve the parent of liability. Such was the holding in Wells v. Lockhart, 258 Ky. 698, 81 S.W.2d 5, where the testimony of the parents was that the child had been re-fused permission to use the car on the particular occasion, and had been given general orders not to take the car alone, but there was evidence that he was seen driving the car alone on occasions so numerous as to warrant the inference that the parent had acquiesced in his general use of the car. The Court said (81 S.W.2d 5, at page 7):

"* * * It perhaps was and is true that appellant cautioned him in its use and may have on occasions expressed perfunctory objections thereto, but the outstanding fact remains that the son continued such use * * *"

It is true that in Sale v. Atkins, 206 Ky. 224, 267 S.W. 223, the parent was held as a matter of law not liable when a 13-year-old son took the family automobile surreptitiously and against positive instructions. However, in that case there was no evidence that the son ever had been permitted to use the car, and the Court said that a jury question might have been presented had there been evidence that it was the "custom or privilege" of the son to use the car.

■ The evidence in the case before us shows conclusively that the Riegel automobile was maintained as a family automobile, and was customarily and frequently used by the son. While ordinarily he asked permission to take the car, the permission customarily was granted, and when refused it was usually for a special reason, such as the unwillingness of the mother to pay for the gasoline, or, as on the occasion here in question, a need of the parents to use the car themselves. Use by the son was a general practice, rather than an exception. Under these facts the question is whether there was such implied or tacit consent to general use as to warrant the conclusion that the use on the occasion in question was within the field of a general acquiescence, notwithstanding the specific refusal of permission for the particular trip.

230

■ In previous cases, such as Wells v. Lockhart, 258 Ky. 698, 81 S.W.2d 5, we have indicated that the question is one for the jury (although the question presented has always been whether a verdict against the parent should be upheld and the court consistently has upheld the verdicts). Where the essential facts are in dispute, we think the question properly is for the jury. But where, as here, the essential facts are not in dispute, the question really becomes one of the scope and extent of the family purpose doctrine as a rule of law, and therefore is a question of law for the court.

■ It is our opinion that where a family automobile is customarily available for use by a child for normal pursuits and on reasonably frequent occasions, and when permission for use has been denied the reason has been a matter of the convenience of other members of the family or a matter of conforming to family economic or social activity policies, the mere fact that permission for a particular trip has been refused will not bar the imposition of liability under the family purpose doctrine. To hold otherwise would, as said in Turner v. Hall's Adm'x, Ky., 252 S.W. 2d 30, destroy the purpose of the doctrine.

■ It may be argued that under the views here expressed a complete revocation of all permission to use the family car could never be effective, following a period during which general use had been permitted. We do not so hold. However, we are of the opinion that a complete revocation of previous general permission should not be given recognition unless a sufficient period of time has elapsed following the revocation, during which the revocation has been enforced, to justify the conclusion that it was a bona fide revocation rather than a mere temporary suspension of permission as a disciplinary matter.

As we view it, the controlling question in any case will be whether the automobile is in fact a "family" automobile, in the sense that the various members of the family have normal usage of it. If it is a family automobile, then the fact that the use on a particular occasion is without permission or in violation of instructions will not bar recovery against the parent who owns or controls the automobile. If it *has been* a family automobile, but the contention is that it ceased to be one, then there must be evidence other than mere statements of intent to show that its status actually did change. Of course if it never was a family automobile, then liability could not arise from a surreptitious use by some member of the family. In practically every case, the facts as to actual usage will control.

It is our conclusion that the circuit court did not err in ruling as a matter of law that Mrs. Riegel was liable under the family purpose doctrine.

In view of the fact that these cases are being remanded for a new trial, we do not consider it necessary to consider in detail the contention that the verdict of $10,000 in favor of Mrs. Bagley is excessive. However, we will say that we think there was sufficient evidence of damages to sustain this award.

The motions for appeal from the judgment in favor of Mrs. Doggett are sustained, and all of the judgments are reversed, for proceedings in conformity with this opinion.