745 P.2d 375

**Vincent MADRID, Petitioner,**

**v.**

**Howard SHRYOCK and Myrtle Shryock, Respondents,**

**and**

**Steven Madrid, Respondent.**

**No. 17199.**

Supreme Court of New Mexico.

Nov. 2, 1987.

**468**

John C. Wheeler, Wheeler, McElwee, Sprague & Long, P.C., Albuquerque, for petitioner.

Charles R. Finley, Warner & Finley, Farrell L. Lines, Lamb, Metzgar & Lines, Albuquerque, for respondents.

## OPINION

WALTERS, Justice.

Plaintiffs Howard and Myrtle Shryock were injured in a two-car collision with defendant Steven Madrid. As a result of the accident they filed personal injury and property damage claims against Steven Madrid, joining Steven's father, Vincent Madrid, under the family purpose doctrine.

Official registration documents showed Steven and Vincent Madrid as titleholders of the automobile Steven was operating when the accident occurred. Evidence was introduced through deposition and affidavits, however, that Steven had initiated and consummated the sales transaction, furnished the down payment, obtained and paid for insurance coverage, made all monthly car payments, paid all vehicle operational and maintenance costs with his own personal funds, and that neither father nor son had requested the title to be applied for in both of their names. Steven was unable to obtain credit from the bank on his own; because of that circumstance, his father co-signed the note that secured the automobile loan.

Steven was twenty-two years old at the time of the accident and lived at the family home with his father, mother, and two sisters. He was employed at his father's business. There was evidence that Vincent Madrid drove the automobile once, that Steven's sister also drove it once, but that the vehicle was not otherwise available for the family's general use. On the day of the accident, Steven was accompanied in the vehicle by his sister and a mutual friend as his passengers.

Vincent Madrid moved for summary judgment, asking to be dismissed as a co-defendant and released from any claim of liability under the family purpose doctrine. The motion was granted, and an appeal was taken by plaintiffs to the court of appeals. That court initially upheld the grant of summary judgment but, acting upon plaintiffs' motion to reconsider, withdrew its earlier decision, reversed the summary judgment, and remanded the matter for further proceedings. We granted certiorari to review the correctness of the court of appeals' construction of the family purpose doctrine in its reversal of the district court's judgment.

The family purpose doctrine is well established in New Mexico. *Peters v. Le-Doux*, 83 N.M. 307, 491 P.2d 524 (1971); *Burkhart v. Corn*, 59 N.M. 343, 284 P.2d 226 (1955); *Pouliot v. Box*, 56 N.M. 566, 246 P.2d 1050 (1952); *Stevens v. Van Deusen*, 56 N.M. 128, 241 P.2d 331 (1951); *Boes v. Howell*, 24 N.M. 142, 173 P. 966 (1918). The applicable section of the family purpose doctrine to be considered is set out in SCRA 1986, 13–1210:

> If you find the motor vehicle operated by _____ was furnished by its owner for general family use and convenience, then the owner is liable for the negligent operation of the vehicle by a member of the family.

> To hold the defendant liable, you must find that the driver [had authority to drive the motor vehicle] [and] [was using the motor vehicle for the pleasure or convenience of the family, or a member of it].

The family purpose doctrine found its genesis in the principles of agency and is based on the legal fiction that the automobile owner makes the pleasure and convenience of his family his business when he provides a vehicle for the use of his family. Annotation, *Modern Status of Family Purpose Doctrine with Respect to Motor Vehicles*, 8 A.L.R.3d 1191, 1196 and 1201

(1966). Under the agency theory and the doctrine of respondeat superior, the automobile owner becomes liable as principal or master for the negligence of a family member fulfilling the role of agent or servant when the family member negligently operates a vehicle in furtherance of a familial purpose. *Id.* New Mexico case law has recognized the theoretical foundation of the family purpose doctrine in agency law. *See Burkhart v. Corn,* 59 N.M. at 346, 284 P.2d at 227–28 (finding sufficient proof of agency to impose family purpose doctrine); *Boes v. Howell,* 24 N.M. at 148, 173 P. at 967 (father who furnishes a vehicle for customary conveyance of members of his family makes conveyance his affair or his business, and anyone driving furnished vehicle for familial purpose with father's consent, express or implied, whether a family member or not, is father's agent); *State Farm Mut. Auto. Ins. Co. v. Duran,* 93 N.M. 489, 491, 601 P.2d 722, 724 (Ct.App. 1979) (family purpose doctrine is grounded on principal-agent, master-servant principles).

■ We do not purport to overrule any of the prior New Mexico cases that have analogized the family purpose doctrine to the agency theory. In affirming the validity of the family purpose doctrine, however, we should recognize a more accurate justification of family purpose decisions than reliance upon fictional agency principles. *See* F. Harper, F. James & O. Gray, *The Law of Torts* § 8.13, at 597 (2d ed. 1986). Accordingly, the family purpose doctrine should not be perpetuated upon the notion that the pleasure of the family is the business of the head(s) of household, but rather upon a recognition of the public policy to require a responsible person to answer for damages caused by the user of the family car. W. Seavey, *Handbook of the Law of Agency* § 88F, at 155 (1964). We are impressed with the comments of Professors Harper, James and Gray:

> The appalling cost of accidents, steadily mounting, affords startling evidence of the hazards owing to the use of high-powered motor vehicles. The dangers to the public from incompetent and financially irresponsible drivers is a menace of

such gravity that every precaution is necessary to reduce such perils to the minimum. It is not too much to demand that the parent who provides an automobile for the pleasure and convenience of the family insure society against its negligent use for such purposes.

F. Harper, F. James & O. Gray, § 8.13, at 597; *see Paprocki v. Stopak,* 213 Neb. 523, 525–26, 330 N.W.2d 475, 477 (1983) (underlying basis of family purpose doctrine is to provide financial responsibility for negligent acts of family members who cause damage to third parties); *Staroba v. Heitkamp,* 338 N.W.2d 640, 641–42 (N.D.1983) (family car doctrine created to further public policy of giving injured party cause of action against financially responsible defendant); *Hasegawa v. Day,* 684 P.2d 936, 938 (Colo.App.1983) (specific rationale of family car doctrine is to fasten financial responsibility upon person more likely to respond in damages when family car is used negligently by a person without sufficient assets of his own); *Bartz v. Wheat,* 169 W.Va. 86, 89–90, 285 S.E.2d 894, 896 (1982) (while agency analogy might be helpful, rationale supporting family purpose doctrine is to enhance possibility of plaintiff's financial recovery); *Lollar v. Dewitt,* 255 S.C. 452, 456, 179 S.E.2d 607, 608 (1971) (rationale of family purpose doctrine is to place financial responsibility upon head of family more likely to respond in damages when family member without sufficient assets uses family vehicle negligently).

Although many courts have continued a principal-agent or master-servant analysis in discussing the family purpose doctrine, others have noted that the doctrine is not founded on the law of agency but, rather, on "justice or supposed necessity" or "humanitarian principles designed to protect the public" from financially irresponsible drivers. *E.g., First–City Bank & Trust Co. v. Doggett,* 316 S.W.2d 225, 229 (Ky. 1958). The theory is that the parent, as the person who has made the vehicle available for use and who is ordinarily the only financially responsible person who could be held chargeable, should bear the liability as a matter of public policy. *Id.;* 6 D. Blash-

field, *Automobile Law and Practice* § 255.21 (3d ed. 1966); *see Turner v. Hall's Adm'x,* 252 S.W.2d 30, 32 (Ky.1952) (family purpose doctrine is humanitarian principle designed for protection of public generally; results from recognition that generally infant has insufficient property in own right to indemnify one suffering from his negligent conduct).

An automobile is not a dangerous instrumentality that would warrant holding an owner strictly liable, but as a matter of practical justice to those who are injured, it is a fact that a car is a heavy, powerful object, is capable of excessive speeds, can be dangerous to life and limb, and must be operated with care. *King v. Smythe,* 140 Tenn. 217, 225–26, 204 S.W. 296, 298 (1918). In recognizing the potentiality of injury and concomitant liability as the basis for development of the family purpose doctrine, "the difficulties of the agency theory are avoided. Undesirable and technical distinctions sometimes supposed to be required will be unnecessary, as, for example, that the child is a servant or agent of the parent when driving some other member of the family, but not when driving alone or with strangers." F. Harper, F. James & O. Gray, § 8.13, at 599. Similarly, it obviates the protracted analysis of whether the driver had authority to operate the vehicle at any specific time. The question would not be whether the head of the family had given the driver express or implied authority to use the vehicle on the moment in question, but simply whether he (or she) had made the vehicle available for use by the driver, or had furnished the vehicle for general use, without restriction, by family members. If automobile owners are to be held liable for the negligent operation of a vehicle which they furnish for family use by a family member who is financially irresponsible, the owner will exercise a greater degree of care in preventing or permitting one to drive the vehicle. *King v. Smyth,* 140 Tenn. at 226, 204 S.W. at 298.

■ In the instant case, the family purpose doctrine is inapplicable as a matter of law. It is unnecessary to rely upon it to satisfy the public policy of indemnifying an injured party. Steven had procured and paid for liability insurance on the vehicle. The court of appeals held that the district court erred in granting summary judgment because genuine issues of material facts existed relative to ownership of the vehicle and whether the father had furnished the vehicle for general family use and convenience. Although vehicle registration documents provided prima facie evidence that Vincent Madrid owned or co-owned the vehicle, NMSA 1978, Section 66–3–12 (Repl. Pamp.1984), mere ownership demonstrated by record titleholder status is not conclusive on the issue of liability under the family purpose doctrine. *Peters v. LeDoux,* 83 N.M. at 309, 491 P.2d at 526. The critical questions are whether in fact Vincent Madrid furnished the car for general family use and convenience, or had the authority to control the use of the car. *Id.* at 309–10, 491 P.2d at 526–27; *See also Stevens v. Van Deusen,* 56 N.M. at 130, 241 P.2d at 332–33.

The essential facts are not in dispute. Not only did Vincent Madrid *not* arrange or encourage Steven's purchase of the automobile, but only Steven expended his own money on the car, and only Steven exercised exclusive authority and control over it. On undisputed evidence, the propriety of summary judgment here becomes one of the scope and extent of the family purpose doctrine as a rule of law. *See First–City Bank & Trust Co. v. Doggett,* 316 S.W.2d at 230.

The only evidence plaintiffs offered to prove that Vincent furnished the vehicle for general family use and convenience was that the father co-signed the note to secure financing for the purchase of the automobile and was named on the registration certificate. To hold that the co-signing of a loan agreement with a financing agency under the circumstances of this case rises to the level of furnishing, supplying, or providing a vehicle under the family purpose doctrine would be to ignore a pervasive commercial practice which amounts to nothing more than an accommodation when a young person attempts to establish credit. In *Smith v. Simpson,* 260 N.C. 601,

611, 133 S.E.2d 474, 482 (1963), for example, the North Carolina Supreme Court held that a father who provided his co-signature to help his son obtain financing to purchase a car was not liable under the family purpose doctrine. The court reasoned there that the father's participation in the transaction was only incidental and secondary, amounting merely to an accommodation for the extension of credit. *Id.* at 611, 133 S.E.2d at 482. As in this case, the son maintained the vehicle, and no one exercised control or had right of control over the vehicle except himself. The *Smith* court refused to impose liability under the family purpose doctrine, declaring that the father must be "a principal mover, one who intends to provide for another or others * * * the automobile, and takes steps on his own responsibility to see to the consummation of the transaction, and contributes substantially of his own means toward that end without expectation of reimbursement or compensation." *Id.* at 611, 133 S.E.2d at 482.

To the same effect is *Mylnar v. Hall*, 55 Wash.2d 739, 745–46, 350 P.2d 440, 443 (1960). There the Court held the family purpose doctrine inapplicable to a father who had registered his minor son's car in his, the father's name, to help the son obtain financing. Evidence of the father's "ownership" was stronger in *Mylnar* because the father had made payments on the vehicle for a short period when the son was unemployed and the father loaned him the money. The son, however, exercised exclusive control over the car. Similarly, in *Spindle v. Reid*, 277 A.2d 117, 118–19 (D.C. 1971), it was held that a mother who took title to her emancipated son's automobile in her name and executed a note for the balance due on the purchase price of the car, but whose son had made all payments and retained full control of the vehicle, was entitled to a directed verdict relieving her of liability under the family purpose doctrine. *See also Porter v. Hardee*, 241 S.C. 474, 476–77, 129 S.E.2d 131, 132 (1963) (judgment for father where minor son lived with parents and received income from working on parent's farm, bought automobile with his own funds, exercised exclusive

control over car, but placed title in father's name); *Keith v. Carter*, 172 Ga.App. 588, 589, 323 S.E.2d 886, 887–88 (1984) (summary judgment correctly awarded father, excusing him of liability under family purpose doctrine, although he gave car to minor son as graduation gift and kept title in own name, but son paid all operational costs, insurance, and registration fees.)

The evidence was uncontradicted that Vincent Madrid did none of the acts generally required to establish that he furnished the automobile driven by his son for general family use and convenience. Nothing was produced to overcome Vincent Madrid's denial of authority to control the use of the vehicle. Steven asserted that only he had such authority and, in fact, only he exercised that control over the use of the vehicle. The mere facts that Steven lived in the family home and that a family member was a passenger in the vehicle at the time of the accident are insufficient to establish a "family purpose." *See Duran*, 93 N.M. at 493, 601 P.2d at 724.

Plaintiffs failed to meet their burden of showing, as a matter of law, the existence of the essential elements under the family purpose doctrine. The court of appeals, therefore, incorrectly reversed the district court's entry of summary judgment in favor of Vincent Madrid. We thus reverse the court of appeals and reinstate the district court judgment.

IT IS SO ORDERED.

SCARBOROUGH, C.J., SOSA, Senior Justice, and STOWERS and RANSOM, JJ., concur.